UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VANESSA LYNN DUKES,

            Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

**DECISION AND ORDER**

6:19-CV-06025 EAW

# **INTRODUCTION**

Represented by counsel, Plaintiff Vanessa Lynn Dukes ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 17), and Plaintiff's reply (Dkt. 18). For the reasons discussed below, the Commissioner's motion (Dkt. 17) is granted and Plaintiff's motion (Dkt. 11) is denied.

**BACKGROUND**

Plaintiff protectively filed her application for SSI on April 2, 2013. (Dkt. 9-5 at 2).[1] In her application, Plaintiff alleged disability beginning March 15, 2012, due to: a heart condition; shortness of breath; difficulty walking, lifting, sitting, and climbing stairs; high blood pressure; hyperthyroid; depression; and memory problems. (Dkt. 9-6 at 2, 16). Plaintiff's application was initially denied on June 13, 2013. (Dkt. 9-9 at 5). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") John P. Costello in Rochester, New York, on November 16, 2014. (Dkt. 9-2 at 27-57). On January 28, 2015, the ALJ issued an unfavorable decision. (*Id.* at 8-24). Plaintiff requested Appeals Council review; her request was denied on March 21, 2016, making the ALJ's determination the Commissioner's final decision. (*Id.* at 2-6).

Plaintiff thereafter brought an action in this District challenging the Commissioner's determination. (Dkt. 9-9 at 25-50). On March 14, 2017, the Hon. Charles J. Siragusa entered a Stipulation and Order for Remand pursuant to sentence four of 42 U.S.C. § 405(g), remanding the matter for further administrative proceedings. (*Id*. at 61-62). On remand, the Appeals Council entered an order instructing the ALJ to: (1) obtain additional evidence regarding Plaintiff's impairments; (2) give further consideration to the opinions of treating and nontreating source opinions, including specifically the opinions of treating physician Dr. Nashat S. Atalla; and (3) if warranted by the expanded record, obtain

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supplemental evidence from a vocational expert ("VE").  (*Id*. at 57-59).  On June 4, 2018, the ALJ held a supplemental hearing.  (Dkt. 9-8 at 49-97).  The ALJ issued a second unfavorable decision on September 8, 2018.  (*Id*. at 2-34).  Plaintiff did not file exceptions to the ALJ's second decision, and it became the Commissioner's final decision.  This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id.*

§ 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since her application date. (Dkt. 9-8 at 7).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of schizoaffective disorder, depressive disorder, bipolar disorder, anxiety disorder, adjustment disorder, posttraumatic stress disorder ("PTSD"), obesity, and Grave's disease/hyperthyroidism. (*Id.*). The ALJ further determined that Plaintiff's claimed lower back pain and cardiac impairment were not medically determinable impairments and that her medically determinable impairments of hypertension, prior toe fracture, and history of substance abuse were nonsevere. (*Id.* at 8).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*

at 9). The ALJ particularly considered the criteria of Listings 12.03, 12.04, 12.06, and 12.15 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling 02-01p. (*Id.* at 9-10).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following additional limitations: "[Plaintiff] is limited to performing simple routine tasks; should work primarily alone with only occasional supervision; and can sit for four hours and stand/walk for four hours each during an eight-hour workday." (*Id.* at 11). At step four, the ALJ found that Plaintiff did not have any past relevant work. (*Id.* at 25).

At step five, the ALJ relied on the testimony of a VE, to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of parking lot attendant and cashier II. (*Id.* at 26). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 27).

## II. The Commissioner's Determination Is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse the Commissioner's determination or, in the alternative, remand this matter to the Commissioner for further administrative proceedings, arguing that: (1) the ALJ erred in rejecting Dr. Atalla's opinions; and (2) the ALJ erred in failing to include all limitations found by consultative examiners Dr. Alan Chu and Dr. Agnes R. Jonas. For the reasons discussed below, the Court finds these arguments without merit.

A.     **Consideration of Dr. Atalla's Opinions**

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id.* "An ALJ's failure to explicitly apply the[se] . . . factors when assigning weight at step two is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is

the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33.

In this case, the ALJ acknowledged that Dr. Atalla was Plaintiff's primary care provider, that he had treated Plaintiff since before her application date, and that he did not provide specialized health care. (Dkt. 9-8 at 13, 17, 21). The ALJ further thoroughly considered the evidence in support of Dr. Atalla's opinions and their consistency with the record as a whole. As to Dr. Atalla's opinions regarding Plaintiff's physical impairments, the ALJ explained that such opinions were internally inconsistent in portions—for example, in April 2013, Dr. Atalla opined both that Plaintiff was moderately limited in her ability to walk and stand and that she was totally unable to stand or walk (*see* Dkt. 9-7 at 121-22)—and that the significant limitations identified by Dr. Atalla were inconsistent with Plaintiff's conservative course of treatment and generally "unremarkable respiratory, musculoskeletal, and neurological examinations." (*Id.* at 15).

The ALJ's reasons for discounting Dr. Atalla's opinions are amply supported by the record. As the ALJ correctly noted, Plaintiff was frequently noncompliant with her

prescribed medications and failed to consistently attend her endocrinology appointments, and she reported feeling "fine" with "no complaints" when taking her medication as prescribed. (*See* Dkt. 9-15 at 254, 303, 307, 308). The ALJ appropriately considered whether Plaintiff had offered any alternative explanations for her noncompliance before drawing an adverse inference therefrom, noting that Plaintiff had admitted that she voluntarily ceases taking her medications. (Dkt. 9-8 at 15); *see Raymond Q. v. Saul*, No. 18-CV-544 FJS CFH, 2019 WL 4758269, at *6 (N.D.N.Y. Aug. 7, 2019) ("Although an ALJ may properly consider a plaintiff's failure to follow treatment as prescribed, the law is clear, that an ALJ may not draw negative inferences from a claimant's lack of treatment without considering any explanations the claimant may provide." (quotation and alteration omitted)), *adopted*, 2019 WL 4757316 (N.D.N.Y. Sept. 30, 2019).

The ALJ was also correct that Plaintiff's physical examinations were consistently unremarkable and thus inconsistent with the significant limitations identified by Dr. Atalla. In particular, as the ALJ noted, Plaintiff consistently had "intact gait, stance, reflexes, ranges of motion, [and] strength[.]" (Dkt. 9-8 at 15; *see, e.g.,* Dkt. 9-13 at 15 (at visit with Dr. Atalla on May 25, 2017, Plaintiff had negative straight leg raising tests bilaterally), 21 (at visit with Dr. Atalla on December 23, 2016, Plaintiff had negative straight leg raising tests bilaterally), 38 (at visit with Dr. Atalla's physician's assistant on May 17, 2016, Plaintiff had full range of motion and 5/5 strength bilaterally, normal gait, and no pain with internal or external joint rotations), 47 (no musculoskeletal abnormalities noted at visit with Dr. Atalla on July 15, 2015), 54 (at visit with Dr. Atalla on November 20, 2014, Plaintiff had normal gait, strength, tone, and reflexes); Dkt. 9-14 at 77-78 (no neurological or

musculoskeletal abnormalities noted on physical examination by cardiologist on November 16, 2012)).  An ALJ is permitted to afford less than controlling weight to a treating physician's opinion where it is inconsistent with his own treatment records.  *See Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) ("Because [the treating physician's] medical source statement conflicted with his own treatment notes, the ALJ was not required to afford his opinion controlling weight.").

As to Dr. Atalla's opinion regarding Plaintiff's mental impairments, the ALJ afforded "significant" weight to Dr. Atalla's view that Plaintiff had "moderate" difficulties functioning in a work setting at a consistent pace but no evidence of limitations in her ability to understand and remember instructions, carry out instructions, make simple decisions, interact appropriately with others, maintain mentally appropriate behavior, and maintain hygiene and grooming.  (Dkt. 9-8 at 21; *see* Dkt. 9-7 at 121-22).  The ALJ afforded "little" weight to Dr. Atalla's opinion that Plaintiff's "addiction behaviors" could cause her to have additional limitations, noting that Plaintiff had been in "sustained remission since later 2013."  (Dkt. 9-8 at 21).  Plaintiff has identified no error with respect to this aspect of the ALJ's decision, nor has the Court found any such error upon its own review.

For these reasons, the Court concludes that the ALJ appropriately considered the relevant factors in assessing Dr. Atalla's opinions and that his assessment thereof was supported by substantial evidence.

**B.     Consideration of Consultative Examiner Opinions**

The Court next considers Plaintiff's argument that the ALJ erred in his consideration of Dr. Chu's and Dr. Jonas's opinions.  Dr. Chu and Dr. Jonas were both consultative examiners and their opinions were thus not entitled to any particular weight; instead, the ALJ was "free to disregard identified limitations . . . not supported by the evidence of record."  *Torbicki v. Berryhill*, No. 17-CV-386(MAT), 2018 WL 3751290, at *5 (W.D.N.Y. Aug. 8, 2018).

Dr. Chu examined Plaintiff on March 12, 2018, and opined that she had a mild restriction for prolonged standing and walking and a moderate restriction for squatting, bending over, heavy lifting, and carrying.  (Dkt. 9-13 at 441)  Dr. Chu further opined that Plaintiff could frequently climb stairs and ramps, occasionally balance, stoop, and kneel, and never crouch or crawl, that she could frequently push/pull with both her left and right hands, that she could only occasionally tolerate unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, pulmonary irritants, extreme heat or cold, and vibration, and that she could tolerate moderate noise.  (*Id.* at 445-447).

The ALJ afforded significant weight to Dr. Chu's opinion that Plaintiff had a mild restriction for prolonged standing and walking and a moderate restriction for squatting, bending over, heavy lifting, and carrying, including Dr. Chu's specific breakdown of Plaintiff's ability to stand, sit, walk, lift, carry, and push/pull, but afforded little weight to the remainder of Dr. Chu's opinion.   (Dkt. 9-8 at 16).  The ALJ explained that Dr. Chu's opinion as to Plaintiff's other postural limitations, noise tolerance, and ability to tolerate environmental irritants was unsupported by Plaintiff's medical history or Dr. Chu's own

examination. (*Id.*). The Court finds no error in the ALJ's assessment of Dr. Chu's opinion. Dr. Chu did not provide any justification for the limitations rejected by the ALJ, nor is such justification apparent from the medical record. In particular, there is no evidence that Plaintiff's impairments cause the environmental sensitivities identified by Dr. Chu, and, as described in detail above, Plaintiff's medical record consistently showed normal musculoskeletal examinations.

Further, as the Commissioner notes (*see* Dkt. 17-1 at 13), any error in the ALJ's assessment of Dr. Chu's opinion was harmless, because the position of cashier II (one of the representative occupations identified by the VE, with 1,700,000 national positions) requires no climbing, balancing, stooping, kneeling, crouching, or crawling, does not involve exposure to vibration, moving mechanical parts, extreme cold or heat, wetness or humidity, or other environmental irritants, and takes place in a moderate noise environment. *See* Dictionary of Occupational Titles, Cashier II, Code 211.462-010. Thus, even had the ALJ adopted every limitation identified by Dr. Chu, it would not have changed the conclusion that Plaintiff was capable of work as a cashier II, which is sufficient to demonstrate that she is not disabled as defined in the Act. *See* 20 C.F.R. § 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.").

As to Dr. Jonas, Plaintiff argues that the ALJ failed to reconcile her "competing findings that Plaintiff had 'moderate limitation interacting adequately with supervisors, coworkers, and the public' in the narrative portion of her opinion and her checking the box

marked 'none' in terms of limitations interacting." (Dkt. 11-1 at 21). Plaintiff is incorrect. In assessing Dr. Jonas's opinion, the ALJ noted that she had opined that Plaintiff had mild to moderate difficulties in interacting adequately with supervisors, coworkers, and the public, but declined to adopt that limitation in its entirety, explaining that state agency psychological consultant Dr. E. Kamin had only assessed Plaintiff as limited in interacting with supervisors, that there was "little evidence of aggressive or antisocial behaviors with providers," and that Plaintiff was capable of attending church twice weekly and performing childcare. (Dkt. 9-8 at 25). In other words, to the extent Dr. Jonas's opinion was unclear as to the degree of Plaintiff's limitations in interacting with others, the ALJ treated the opinion as having assessed the more severe limitations and explained his reasoning for finding those limitations not entirely supported by the record. The Court finds no error in the ALJ's consideration of Dr. Jonas's opinion.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 17) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: September 23, 2020
      Rochester, New York